IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG

TONIA L. LEWIS,

        Petitioner,

v.                                   Civil Action No.: 3:20-CV-203
                                         (GROH)

WARDEN P. ADAMS,

        Respondent.

## REPORT AND RECOMMENDATION

### I. INTRODUCTION

On October 26, 2020, Petitioner, a federal inmate, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 challenging a prison disciplinary procedure, along with exhibits. ECF Nos. 1, 1-1.[1]

The matter is now before the undersigned United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be dismissed with prejudice.

### II. FACTUAL AND PROCEDURAL HISTORY

#### A. Prison Disciplinary Proceedings

Petitioner is currently an inmate at the Hazelton Secure Female Facility in the Northern District of West Virginia. Previously, Petitioner was an inmate at FPC Alderson, who on September 17, 2019, was charged in incident report 3304793 with three

---

[1] All ECF numbers cited herein are from the instant case, 3:20-CV-203, unless otherwise noted.

offenses: (1) Refusing to Obey an Order, in violation of Offense Code 307; (2) Being Insolent to Staff, in violation of Offense Code 312; and (3) Assaulting Without Serious Injury, in violation of Offense Code 224. ECF No.14-1 at 3, 18. The incident report stated the following:

> On 9-17-2019 at approximately 7:20 a.m, I observed an inmate speaking to Counselor V. Booher in the lower hallway of A-Building. I could identify the inmate as [Petitioner] Lewis [ ] who is housed in housing unit A-1. I recognized inmate Lewis because she is assigned to my workload. Inmate Lewis was inquiring about copies of commissary sheets because they, referring to inmates, did not have enough. I explained to inmate Lewis that Unit Team staff is not authorized to make copies for inmates, unless it is of legal nature but that she could speak to the Unit Manager in order to get this resolved. She responded by saying, "I'm not talking to you, I'm talking to Ms. Booher." I attempted to explain the correct way for the inmate to request copies but she interrupted me by saying, "I'm not talking to you and quit harassing me." This time she used a loud and threatening tone of voice and continued to speak in a loud and insolent tone of voice towards me and Counselor Booher, stating that she was not going to be intimidated or harassed by staff. She was loud and insubordinate to the point that I had to order her to leave the hallway area and go back to her housing unit. At this time she repositioned her stance, facing me and stated, "Are you going to make me leave the hallway?" Once again, she used a threatening tone of voice and her stance made me feel threatened by her actions. I proceeded to give inmate Lewis a second direct order to leave the hallway and go back to the housing unit but she failed to obey my order again. She turned to Counselor Booher and attempted to speak to her but was t[old] that her actions were inappropriate and was ordered to leave the hallway. I proceeded to open the hallway door for inmate Lewis to exit. As she walked towards the exit she turned towards me in an aggressive manner by using her left arm and shoulder by bumping into me, hitting my person on my right upper torso area which resulted in my arm being forcibly moved by the contact of her body.

Id. at 18. On September 17, 2019, on or around at 2:02 p.m., C. Richardson, delivered the incident report to Petitioner. Id. Petitioner was advised of her rights before the DHO

2

by staff member C. Snuffer on September 24, 2019.  Id.  The DHO hearing was held on November 1, 2019 at 12:02 p.m.  Id.  At the DHO hearing, Petitioner requested she have a staff representative, and accordingly R. Pack of Food Service appeared at the hearing.  Id.  Petitioner wanted to call other witnesses, but did not know their names, and sought Ms. Pack to assist her in identifying those witnesses.  Because of security concerns related to Petitioner's transfer to the Roanoke County Jail after the incident and transfer back to Alderson immediately prior to her DHO hearing, Ms. Pack was unable to assist Petitioner as requested.  Id.  In her defense, Petitioner denied the charges and stated:

> I shopped on 09-16-2019 and I spent my money and I know I can't shop that is why Ms. Wade is lying.  I went to Ms. Booher about my legal copies.  I went to the unit door and it was locked and then I knocked on the doors to A2 and no one opened the door and I left and then I heard someone say hang tight Lewis.  I then could only assume they were talking to me and Ms. Wade had papers in her hand and then I seen Ms. Booher.  I was asking Booher about legal copies not about the copy card and Ms. Wade told me to leave and I told her that I was not speaking to her that I was speaking to Booher.  I was standing at the door and was told to move and I was mad and I only told her to get copies of legal copies.  She was pointing her finger in my face and I did not refuse to leave.  I did not bump into Ms. Wade she pushed the door open to turn and I exited without bumping into her.  Both the staff are lying in their reports.  I have never been in trouble I don't have time to do this.  I feel that staff are retaliate[ing] against me and they are lying in their reports

Id.  The DHO listed that documentary evidence was considered in the statements of J. Carter, A. Unit Office; Lt. D. Ward; and Correctional Counselor V. Booher.  Id. at 19.

Following the hearing, the DHO found that Petitioner committed the prohibited act of Assault without Serious Injury, in violation of Code 224.  Id. at 19 – 20.  The DHO wrote in his or her[2] report that he relied on the written statement of the reporting staff member.

---

[2] It is unclear whether the DHO, M. Leslie, is male or female.

3

Id. at 20.  Further, the DHO wrote he relied upon a memorandum from V. Booher, Unit Counselor, which documented that on September 17, 2019, at approximately 7:20 a.m.:

> Ms. Wade stepped out to look and see who had knocked on the lower team door… Inmate Lewis told Ms. Wade that she was looking for Booher and Lewis was not called over and it was not open house hours. . . . As Ms. Wade was explaining [the copy policy] to inmate Lewis, inmate Lewis then told Ms. Wade that she was not talking to her that she was talking to me [ ].

Id. at 21.  According to the DHO report, Booher reported that Ms. Wade explained the copy policy to Petitioner "in a professional and respectful explanatory tone," but that "Inmate Lewis then interrupted Ms. Wade.  Id.  Then Booher and Wade both instructed Petitioner to leave the hallway, with Ms. Wade giving Petitioner repeated instructions to leave.  Id.  Booher further reported that:

> Ms. Wade opened the door [and] left enough room for inmate Lewis to go out the door without having to get close, however inmate Lewis turned toward Ms. Wade in an aggressive manner and in a purposeful manner positioned herself to walk close to Ms. Wade and with her body made contact with Ms. Wade's upper torso area.

Id.  The DHO further wrote that:

> [The] DHO considered [Lewis's] denial of the charge, but the DHO was not convinced or swayed by her innocence.  Inmate Lewis claims that she never refused orders or bumped into Ms. Wade.  Lewis stated the report is a lie and that staff are only trying to retaliate against her.  The DHO asked Lewis what evidence, if any, did she have to support her allegation.  Lewis stated that she had no evidence other than her word.  DHO also considered the statement of her witnesses; however, the witnesses claimed to not see anything that happened.  The DHO explained to Lewis that she does not believe the reporting officer, along with Ms. Booher conspired together to fabricate an incident and charge her for prohibited acts that she did not commit.  The DHO informed Lewis that she finds no motive for staff to lie and furthermore they are under legal obligation to be truthful.  DHO finds no reason of

4

> why staff would want to retaliate against inmate Lewis. The DHO informed Lewis that she does have a motive for denying [ ] involvement in this act. That motive is the knowledge that the charges are serious and have significant consequences should [she] be found to have committed the acts.
>
> Accordingly, the DHO gives greater weight to the officer's written report and evidence presented and the DHO finds that [Lewis] committed the prohibited act of Code 224 Assaulting Without Serious Injury. DHO elected to expunge the code 312 and 307 as it was part of the greater act.

ECF No. 14-1 at 22. Petitioner was sanctioned to 27 days loss of good time credit for her conviction for Assaulting Without Serious Injury, two months loss of commissary privileges, and four months loss of phone privileges. ECF No. 14-1 at 22.

### B.   Instant § 2241 Petition

Petitioner's sole ground for relief alleges that the Bureau of Prisons (BOP) unlawfully revoked her good time credits. ECF No. 1 at 5. She appears to argue that there was insufficient evidence to convict her of the offense of Assaulting Without Serious Injury. Id. at 5 - 6. Petitioner asserted that she exhausted the grievance procedure. Id. at 8, 9. However, Petitioner also states that at the time she filed her petition, that the BOP general counsel "has not responded" to her administrative appeal. Id. at 9. Petitioner requests that her good time credit be restored, and that disciplinary reports be expunged from her institutional record. Id. at 9.

Respondent filed a motion to dismiss or for summary judgment, with a memorandum and exhibits in support thereof, on December 9, 2020. ECF Nos. 13, 14, 14-1. Petitioner filed a response[3] on January 19, 2021. ECF No. 17. Therein, Petitioner

---

[3] Petitioner further filed a response to the motion to dismiss which alleges that BOP employees involved with her disciplinary hearing falsified an incident report, produced false documents under the name "Federal Bureau Prisons" instead of Federal Bureau of Prisons, that the DHO made a false statement on her report, and that the DHO improperly stated that Petitioner was transferred between correctional facilities

argues that her due process rights were violated by BOP officers who "attempt[ed] to implicate Petitioner in an assault charge that did not occur." Id. at 6.

Respondent filed a reply on January 25, 2021. ECF No. 19.

### III. STANDARD OF REVIEW

#### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, this Court is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening Petitioner's case to determine if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), Rules Governing Section 2255 Cases in the U.S. District Courts.

#### B. Pro Se Litigants.

Courts must read *pro se* allegations in a liberal fashion and hold those *pro se* pleadings "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). Pursuant to 28 U.S.C. § 1915A(b), the Court is required to perform a judicial review of certain suits brought by prisoners and must dismiss a case at any time if the Court determines that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. A complaint is frivolous if it is without arguable merit either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989) (superseded by statute). The Supreme Court in Neitzke recognized that:

> Section 1915(d)[4] is designed largely to discourage the filing

---

on an incorrect date. ECF No. 7-1.

[4] The version of 28 U.S.C. § 1915(d) which was effective when Neitzke was decided provided,

6

> of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits under Federal Rule of Civil Procedure 11. To this end, the statute accords judges not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.

490 U.S. at 327.

### C. Habeas Corpus Petitions Filed Pursuant to 28 U.S.C. § 2241

A petition filed pursuant to § 2241 is the appropriate method to challenge a due process violation as part of a prison disciplinary proceeding. Burgess v. Dunbar, 628 Fed. Appx. 175 (4th Cir. 2015).

### D. Motions to Dismiss

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a case when a complaint fails to state a claim upon which relief can be granted. The Federal Rules of Civil Procedure require only, "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited, "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of

---

"The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious." As of April 26, 1996, the statute was revised and 28 U.S.C. § 1915A(b) now provides, "On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-- (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."

7

his claim which would entitle him to relief." Conley, 355 U.S. at 45-46.

Plaintiff is proceeding *pro se* and therefore the Court must liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 - 1 (1972) (per curiam); Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007). Although a complaint need not contain detailed factual allegations, a plaintiff's obligation in pleading, "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do...." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face." Id. at 555, 570. In Twombly, the Supreme Court found that, "because the plaintiffs [ ] have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id. at 570. Thus, to survive a motion to dismiss, a plaintiff must state a plausible claim in his complaint which is based on cognizable legal authority and includes more than conclusory or speculative factual allegations.

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id. at 678. "[D]etermining whether a complaint states a plausible claim . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Thus, a well-pleaded complaint must offer more than, "a sheer possibility that a defendant has acted unlawfully," in order to meet the plausibility standard and survive dismissal for failure

8

to state a claim. Id. at 678.

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of North Carolina v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

### E. Motion for Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56(a), the Court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence in the light most favorable to the nonmoving party. Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion to, "demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

9

Corp., 475 U.S. 574, 586 (1986).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a verdict." Anderson, supra, at 256. Thus, the nonmoving party must present specific facts showing the existence of a genuine issue for trial, meaning that "a party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248.

To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, supra, at 248.

Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, supra, at 587. "Where the record as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. citing First Ntl. Bank of Ariz. v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 155, 1592 (1968). See Miller v. Fed. Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). Although any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, where, the record taken as a whole could not lead a rational trier of

fact to find for the non-moving party, disposition by summary judgment is appropriate. Matsushita, supra, at 587-88. Anderson, supra, at 248-49.

## IV. ANALYSIS

Petitioner contends that her due process rights were violated during the prison disciplinary process, including the DHO proceedings held on November 1, 2019, when she asserts that BOP staff testified untruthfully, that she was not permitted to call certain witnesses in her defense, and that there was insufficient evidence to support her conviction. ECF No. 1 at 5 – 6. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). When a prison disciplinary hearing may result in the loss of good time credit, due process requires the following:

1. giving the prisoner written notice of the charges at least twenty-four hours before he appears for his disciplinary hearing;

2. providing the prisoner a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action;

3. allowing the prisoner to call witnesses and present documentary evidence in his defense, when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals;

4. if the prisoner is illiterate or the complexity of the issue makes it unlikely that the prisoner will be able to collect and present the evidence necessary for an adequate comprehension of the case, permitting the prisoner the aid of a fellow prisoner, or if that is forbidden, aid from staff or a sufficiently competent inmate designated by staff; and

5. providing impartial factfinders.

11

Id. at 564-566, 570-571.

In the present case, the Court finds that Petitioner was provided all the due process required for a disciplinary proceeding for several reasons.  First, Petitioner received notice of the incident report on September 17, 2019.  ECF No. 14-1 at 18.  Petitioner received notice of the disciplinary hearing to be scheduled, and her rights at that hearing, more than twenty-four hours before the hearing, on September 24, 2019, and again at the hearing on November 1, 2019.  Id.  Second, the DHO Report includes several paragraphs which explain the specific evidence relied on to support the findings, including the statement of the staff members who reported the incident, and statement of other staff members.  Id. at 20 – 22.  Third, Petitioner was offered the opportunity to call witnesses, which she did.  Petitioner wanted to call two additional witnesses, however, she was unable to identify those witnesses, and so was unable to call them.  Petitioner also testified in her own defense and denied that she made contact with the staff member.  Id. at 22.  Fourth, Petitioner is not illiterate, nor did the complexity of the issue make it unlikely that Petitioner could collect and present the evidence necessary for an adequate comprehension of the case; thus Petitioner did not require the aid of a fellow prisoner or staff.  Nevertheless, Petitioner was offered, and accepted staff aid at the hearing before the DHO.  Id. at 18.  Finally, the DHO was an impartial factfinder, M. Leslie, who was not the staff member who authored the Incident Report.  Id. at 23.  The incident report was authored by D. Wade, whose statement was used by DHO M. Leslie.  Id.

The results of a prison disciplinary proceeding will be upheld so long as there is "some evidentiary basis" to support the decision.  Superintendent v. Hill, 472 U.S. 445, 455. (1985) ("due process in this context requires only that there be some evidence to

support the findings made in the disciplinary hearing." Id. at 457). Determining whether there is some evidentiary basis to support a decision:

> Does not require examination of the entire record, independent assessment of the credibility of the witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached . . . .

Id. at 455 - 56.

In this case, the Disciplinary Hearing Officer found Petitioner guilty of Assaulting Without Serious Injury, in violation of Prohibited Act Codes § 224. The reasons listed by the DHO for his or her finding, included the statement of the reporting staff member in the Incident Report. ECF No. 14-1 at 20 – 22. The DHO also considered the statement of Petitioner, but found the greater weight of the evidence supported Petitioner's conviction. Id.

This Court finds that the evidentiary requirement standard enunciated in Superintendent v. Hill, supra, was met. Therefore, the undersigned finds that the Disciplinary Hearing Officer's decision is supported by some evidence and that the Petition as a whole should be denied.

## V. RECOMMENDATION

For the foregoing reasons, I **RECOMMEND** that the Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] be **DENIED.** It is further **RECOMMENDED** that Respondent's Motion to Dismiss, or in the Alternative, for Summary Judgment [ECF No. 13] be **GRANTED** and that the § 2241 proceeding be **DISMISSED WITH PREJUDICE**.

**Within fourteen (14) days** after being served with a copy of this

Recommendation, any party may file with the Clerk of the Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the Honorable Gina M. Groh, Chief United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitation, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court. The Clerk is directed to terminate the Magistrate Judge's association with this case.

The Clerk is directed to provide a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet, and to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED:**   May 13, 2021

ROBERT W. TRUMBLE
UNITED STATES MAGISTRATE JUDGE